IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

**ANTONIO STRONG**  **PLAINTIFF**
Reg. #46018-044

v.                Case No. 2:22-cv-00191-LPR-JJV

**USA**  **DEFENDANT**

**ORDER**

      The Court has received and reviewed Judge Volpe's Partial Recommended Disposition (PRD), recommending that the United States' Motion for Summary Judgment be denied.[1] No objections have been filed and the time to do so has expired. Nonetheless, the Court has conducted a *de novo* review of the PRD and has carefully considered the entire record. Respectfully, the Court parts ways with the PRD. For the reasons discussed below, the Court GRANTS the United States' Motion for Summary Judgment.[2]

      Much of the PRD is correct. First, the PRD is correct that, because Plaintiff did not respond to the summary judgment papers, all of the facts in the United States' Statement of Material Facts are deemed admitted.[3] Second, the PRD is (as a general matter) correct—though not entirely complete—in the basic timeline of events and background information it provides.[4] Third, the PRD is correct that, by virtue of the interaction between the FTCA and the Arkansas Medical Malpractice Act, a plaintiff must have expert testimony establishing the standard of care, a breach of that standard, and proximate causation unless the issue is within the jury's comprehension as a

---

[1] Partial Recommended Disposition (Doc. 53).

[2] Mot. for Summ. J. (Doc. 44).

[3] *See* Partial Recommended Disposition (Doc. 53) at 2; Local Rule 56.1(c).

[4] *See* Partial Recommended Disposition (Doc. 53) at 2–6.

matter of common knowledge.[5]  Fourth, the PRD is correct that Plaintiff has not provided any evidence from which a reasonable jury could conclude that the 12-day delay between the initial hand injury and Plaintiff's first visit to the hospital was the proximate cause of any further injury to Plaintiff's hand.[6]

Given the significant areas of agreement just discussed, this Court is not going to recreate the wheel with an entirely new opinion.  Instead, the Court simply explains its main disagreements with the PRD and why those disagreements require granting summary judgment to the United States.

1.     The first area of disagreement concerns Plaintiff's lack of an expert.  The PRD appears to conclude that Plaintiff can survive summary judgment in this case without an expert.[7]  The Court disagrees.

At the outset, it is only fair to acknowledge that Plaintiff is a *pro se* litigant and prisoner.  But, just as importantly, the Court also notes that Plaintiff has never asked for appointed counsel or a government-funded expert.  This case was originally filed in October of 2022.[8]  Discovery initially opened in February of 2023.[9]  And discovery did not close until May 17, 2024.[10]  Certainly, if Plaintiff wanted appointed counsel or a government-funded expert, he had plenty of time to ask for those things.  If Plaintiff had sought counsel or an expert—and had been rebuffed by the Court—the Court might feel differently about the implications of his failure to proffer expert

---

[5] *See id.* at 6; 28 U.S.C. § 1346(b)(1); Ark. Code. Ann. § 16-114-206(a).

[6] *See* Partial Recommended Disposition (Doc. 53) at 6–7.

[7] *Id.* at 8.

[8] *See* Compl. (Doc. 2).

[9] *See* Feb. 27, 2023 Initial Scheduling Order (Doc. 14).

[10] *See* Oct. 3, 2023 Initial Scheduling Order (Doc. 41); Mot. to Extend Time (Doc. 42); Apr. 1, 2024 Order (Doc. 43).

testimony for summary judgment purposes. But that is not where we are. Plaintiff's lack of an expert is his own doing.

That is a real problem for Plaintiff. In the Court's view, pursuant to the dictates of the Arkansas Medical Malpractice Act, Plaintiff needs expert testimony to show that the delay in getting him to an orthopedic follow-up appointment (after his initial hospital visit) was the proximate cause of some damage to his hand that was in excess of the damage caused by the original injury.[11] This is because whether the delay contributed to additional damage is not a matter within the common knowledge of lay jurors.[12]

The PRD seems to acknowledge as much. It describes as "persuasive" the United States' argument "that Plaintiff has not [shown] by [means of] a qualified medical expert how any alleged delay in treatment caused him injury from which he did not already suffer due [to] the [initial injury] itself . . . ."[13] And it explicitly "agree[s] with" the United States "that . . . whether any injury was proximately caused by a breach of" "the standard of care for a displaced metacarpal bone with mild volar angulation" is a matter "beyond the 'common knowledge' of a fact finder in the absence of expert testimony."[14] If all that is true—and the Court thinks it is—then the ineluctable conclusion must be that Plaintiff's lack of an expert is fatal to his case.[15]

---

[11] *See* Ark. Code Ann. § 16-114-206(a)(3).

[12] *See Spring Creek Living Ctr. v. Sarrett*, 319 Ark 259, 262, S.W.2d 598, 600 (1995) ("[C]laims based on allegations of a failure to provide needed medical care and attention . . . come within the ambit of the Medical Malpractice Act and are dependent upon expert testimony.").

[13] Partial Recommended Disposition (Doc. 53) at 8.

[14] *Id.*

[15] At one point, the PRD seems to suggest that, if summary judgment is denied, Plaintiff (with court-appointed counsel) should either privately retain an expert or seek a government-funded expert from the Court. *See* Partial Recommended Disposition (Doc. 53) at 9. The PRD's suggestion is further evidence that the PRD believes expert testimony is necessary in this case. If expert testimony is necessary to prove Plaintiff's case at trial and Plaintiff does not have that testimony at this point, summary judgment for Defendant is the lawful resolution of the case. That might be harsh in the circumstances, but sometimes the law is harsh.

The PRD does go on to—somewhat cryptically—say that record evidence "create[s] a genuine issue of material fact even without expert testimony."[16] But the PRD never exactly says what the genuine issue of material fact is. In any event, and more to the point, the abstract existence of a genuine issue of material fact is not enough to survive summary judgment in a case like this one, which is governed by the specific requirements of the Arkansas Medical Malpractice Act. Because Plaintiff needs expert testimony on proximate causation to prevail at trial, he must have provided expert testimony on the point at the summary judgment phase. And because he did not do so, the United States is entitled to judgment as a matter of law regardless of the strength or weakness of its medical expert.[17]

    2.    The second area of disagreement concerns the PRD's treatment of certain facts provided by the United States' medical expert, Dr. Jeff Johnson. The PRD takes issue with some of the testimony provided by Dr. Johnson. For example, when discussing Plaintiff's January 31, 2022 visit to an orthopedist, the PRD states:

> [Dr. Johnson] . . . says in his declaration that "there was no obvious rotational deformity, crossover, or scissoring, and . . . [Plaintiff's] long term outcome looked good. Moreover, there was no change in his alignment to suggest a rotational deformity which, if present, might hinder his function." But I could not find any support for those assertions in the Clinical Notes or Radiological Report. And Dr. Johnson's declaration does not explain how he reached that conclusion.[18]

The PRD's questioning of the Johnson testimony does not grapple with the implications of Plaintiff's failure to respond to the summary judgment papers. In the United States' Statement of

---

[16] Partial Recommended Disposition (Doc. 53) at 8.

[17] *See Johnson v. Schafer*, 2018 Ark. App. 630, 3, 565 S.W.3d 144, 146–47 (2018) ("In medical-malpractice actions, unless the asserted negligence could be comprehended by a jury as a matter of common knowledge, a plaintiff has the additional burden of proving three propositions by expert testimony: the applicable standard of care; the medical provider's failure to act in accordance with that standard; and that the failure was the proximate cause of the plaintiff's injuries. When the defendant demonstrates the plaintiff's failure to produce the requisite expert testimony, the defendant has demonstrated that no genuine issues of material fact exist and is therefore entitled to summary judgment as a matter of law." (internal citations omitted)).

[18] Partial Recommended Disposition (Doc. 53) at 4 n.2.

Material Facts, the United States asserted each of Dr. Johnson's above findings as fact.[19] Because Plaintiff failed to respond to the Statement of Material Facts, all of those statements are deemed admitted and the PRD should have accepted them as true.[20]

The PRD makes a similar error with respect to a second part of Dr. Johnson's testimony. The PRD takes issue with Dr. Johnson's testimony concerning the effect (or, more accurately, the non-effect) of any delay in getting Plaintiff to an orthopedic follow-up after his first visit to the hospital:

> Dr. Johnson concludes in his Declaration that Plaintiff was not harmed by the delay because "surgical treatment requires isolation, a cast, the need for hardware removal after a month, and intensive post-operative hand therapy," which would not be feasible in an institutional setting. . . . While Dr. Johnson has provided a well-supported opinion, I find it fails to carry the day here. Dr. Johnson says he has treated patients in "institutional settings" and that he is "familiar with the limitations placed on post-operative orthopedic patients who are in custody." But he does not say if he is familiar with FCI-FC Medium or explain why the anticipated post-operative care was not feasible there.[21]

Once again, the PRD sidesteps the implications of Plaintiff's failure to respond to the summary judgment papers. In its Statement of Material Facts, the United States clearly asserted:

> 33. The fact that a patient is confined to an institutional setting affects the prescription of successful orthopedic management.
>
> * * *
>
> 35. Although [Plaintiff] did not see an orthopedic for follow up between September 9, 2021 and January 31, 2022, his medical outcome was the same. Surgical treatment requires isolation, a cast, the need for hardware removal after a month, and intensive post-operative hand therapy.
>
> 36. As of January 2022, [Plaintiff] was doing well with no tenderness [and] no obvious rotational deformity. Rotational deformity of the bone would result in

---

[19] *See* Statement of Material Facts (Doc. 46) ¶ 18 ("In addition, there was no obvious rotational deformity, crossover, or scissoring, and his long term outcome looked good. Moreover, there was no change in his alignment to suggest a rotational deformity which, if present, might hinder his function." (internal citations omitted)).

[20] *See* Local Rule 56.1(c).

[21] Partial Recommended Disposition (Doc. 53) at 7–8 (internal citation omitted).

>clinical crossover or scissoring of the small finger over the ring or away from the ring. Therefore, his deformity was in the plane of motion and did not result in a crossover of the ring and small fingers. His long term outlook was good. A corrective osteotomy (surgery) for [Plaintiff] would not have been indicated while he was in custody due to his inability to receive post operative hand therapy.[22]

These are all facts. They are all uncontroverted because Plaintiff did not respond to them. So they are all deemed admitted and the PRD should have accepted them as true.

In short, the PRD appears to be creating issues of fact where none actually exist between the parties. The Court understands (and is sympathetic to) the instinct here. The United States' position on the reasons why surgery was not indicated for a prisoner is—to be polite about it—underwhelming. And it certainly feels like the delay in getting Plaintiff to a follow-up appointment was (1) a significant screw-up and (2) something that might have implications for how a hand heals. But the Court can't litigate a case for a plaintiff, even if that plaintiff is a *pro se* prisoner. Plaintiff's lack of response to the summary judgment papers has resulted in the admission of facts that make it impossible for him to prevail at this stage, especially when combined with his failure to provide expert testimony.[23]

For the foregoing reasons, the Court GRANTS the United States' Motion for Summary Judgment in its entirety.[24]

---

[22] Statement of Material Facts (Doc. 46) ¶¶ 33, 35–36 (internal citations omitted).

[23] Under Federal Rule of Civil Procedure 56(e), the Magistrate Judge could have given Plaintiff an additional chance to respond to the Statement of Material Facts. He did not do so. Under the same Rule, this Court could do so. But the Court declines to exercise its discretion in this way. Plaintiff chose not to seek counsel. Plaintiff chose not to ask for an expert. Plaintiff chose not to respond in any way to the United States' summary judgment papers. For a response to the Material Statement of Facts to be meaningful at this point, the Court would have to, on its own initiative, stay the Motion, appoint counsel, provide Plaintiff an expert (or give him time to retain one on his own), and then allow a response to the Statement of Material Facts. That feels too close to helping a particularly sympathetic litigant and too far from neutrally judging an adversarial process.

[24] Mot. for Summ. J. (Doc. 44).

IT IS SO ORDERED this 17th day of March 2025.

_____
LEE P. RUDOFSKY
UNITED STATES DISTRICT JUDGE